```
                                                            FILED
                                                       IN CLERK'S OFFICE
                                                    U S DISTRICT COURT E.D.N.Y.
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                         ★  AUG 0 7 2012  ★
------------------------------------------------------------X
     CALVIN WRIGHT,                                   BROOKLYN OFFICE

                         Plaintiff,
                                                    FINDINGS OF FACT AND
             -against-                              CONCLUSIONS OF LAW

     UNITED STATES OF AMERICA,                      09-CV-5411 (NGG) (RML)

                         Defendant.
------------------------------------------------------------X
```

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Calvin Wright brought this action against Defendant United States of America, pursuant to the Federal Tort Claims Act, for injuries he claims to have suffered when he was struck by the United States' vehicle while crossing a street in Brooklyn, New York. (Compl. (Docket Entry # 1).) The United States Answered the Complaint. (Docket Entry # 3.) After the completion of discovery, the court held a bench trial in which it received documentary evidence and heard witness testimony. (Minute Entry of June 20, 2012.) The court now states its Findings of Fact and Conclusions of Law, pursuant to Federal Rule of Civil Procedure 52(a).

## FINDINGS OF FACT

The events of this case occurred on Utica Avenue in Brooklyn, New York. (Bench Trial Tr. ("Tr.") at 70.) Utica Avenue runs from north to south and intersects with three streets running east to west that are pertinent to this case: Eastern Parkway (the southernmost), Lincoln Place, and St. Johns Place (the northernmost). In other words, a car driving north on Utica Avenue would cross Eastern Parkway, then Lincoln Place, and then St. Johns Place.

On April 11, 2009, at around 8:50 a.m., United States Army Recruiter Derek Austin arrived at his office, located at the corner of Utica Avenue and Eastern Parkway. (Id. at 32, 56.) He completed some brief preparatory work for an appointment later that morning. (Id. at 57-58.)

1

He then agreed to drive Theresa Abraham—who at the time was a future soldier awaiting assignment—to the nearby home of Abraham's sister. (Id. at 58, 97.) Shortly before 9:00 a.m. the two left the office in a United States-owned 2007 Chevy Malibu. (Id. at 57.)

The car had been parked on a service road on Eastern Parkway. (Id. at 59.) Austin entered the car on the driver's side and Abraham on the passenger side. (Id.) There was a light drizzle outside, so Austin ran his windshield wipers once. (Id.) He then drove the car to the corner of Eastern Parkway and Utica Avenue, stopped at a red light at the corner, and, when the light turned green, turned right onto Utica Avenue and proceeded north toward Lincoln Place. (Id. at 59-60.) The car eventually reached another red light at the corner of Utica Avenue and Lincoln Place. (Id. at 60.)

At around the same time, Plaintiff Calvin Wright was walking south on the eastern side of Utica Avenue between St. Johns Place and Lincoln Place. (Id. at 10.) He was on his way to a train station at around the corner of Utica Avenue and Eastern Parkway. (Id. at 10-11.)

Utica Avenue is a two-way street with a traffic lane and a parking lane in each direction. (Id. at 12, 62.) Starting at the corner with Lincoln Place and moving north, on the east side of Utica Avenue is a Chase Bank branch, an electronics store, an H&R Block branch, a shoe store, and a clothing store. (Id. at 11, 66.)

At this point the key facts become disputed. Both parties agree that a collision occurred while Wright was attempting to cross the street from the east side of Utica Avenue to the west side. In dispute is the location along Utica Avenue at which the collision occurred. Wright testified that he was in a crosswalk at the intersection of Utica Avenue and Lincoln Place and, with the right of way, was struck when Austin drove through a red light. (Id. at 11.) Austin testified that the collision occurred "a little way [d]own the block" on Utica Avenue between

Lincoln Place and St. Johns Place—i.e., not at the intersection. (Id. at 60-61.) As discussed below, the court finds that the weight of the evidence supports Austin's account of the disputed events.

Austin testified that, driving north on Utica Avenue, he stopped at the red light at Lincoln Place and turned the car's wipers on as the rain began to increase in intensity. (Id. at 60.) When the light turned green, he continued to drive north on Utica Avenue toward St. Johns Place at approximately fifteen miles per hour, looking straight ahead. (Id. at 60-61, 69.) While roughly in front of the H&R Block branch between Lincoln Place and St. Johns Place, Austin saw in his peripheral vision a "dark presence" appear between two parked SUVs, and almost immediately heard a sound. (Id. at 60-63, 69.) He quickly braked and parked the vehicle. (Id. at 70.) Austin got out of the car and spoke to Wright—the man he had struck—who was standing in the street roughly between the two parked SUVs near the H&R Block branch. (Id. at 74.) He later noticed that the passenger side mirror of the car was slightly misaligned and pushed it back into place. (Id. at 80.) The car was not otherwise damaged. (Id.)

Austin's description of the collision is supported by the testimony of two witnesses and documentary evidence.

First, his testimony is corroborated by that of Theresa Abrahams, who was sitting in the passenger seat of the vehicle at the time of the collision. Like Austin, Abrahams testified that, after stopping at a red light at the intersection of Utica Avenue and Lincoln Place, the vehicle struck Wright as Austin was driving along Utica Avenue toward St. Johns Place at approximately ten to fifteen miles per hour.[1] (Id. at 99). She said that the collision occurred

---

[1] Wright testified that the United States' vehicle was traveling at twenty-five miles per hour at the moment of collision. (Tr. at 44.) The court, however, finds more credible the testimony of both Austin and Abrahams that the vehicle was traveling at no more than fifteen miles per hour. Because they were in the vehicle for the entire drive, Austin and Abrahams were likely more capable of assessing the vehicle's speed than Wright, who only briefly

3

when Wright "popped out" between two parked SUVs roughly between the H&R Block branch and the electronics store on Utica Avenue. (Id. at 99-104.) She further testified that the collision did not occur at the intersection of Utica Avenue and Lincoln Place but rather approximately fifty feet from the intersection. (Id. at 114.)

Second, Austin's testimony is corroborated by that of NYPD Officer Carlos Padilla, who came to the scene shortly after the collision. He testified that he prepared an accident report after interviewing Austin and Wright at the scene. (Id. at 130.) His report indicated that both Austin and Wright agreed at the time that the collision had occurred along Utica Avenue approximately fifty feet north of the intersection with Lincoln Place.[2] (Id. at 128-29.) The report also indicated that Wright himself had informed Padilla at the time that Wright had not been at the intersection and rather had been crossing in the middle of the street with no signal or crosswalk. (Id. at 131-32.) Although Padilla did not see the collision itself, his accident report stated, based on his conversations with Wright and Austin, that the "contributing factor" of the accident was Wright crossing the street with "no traffic device" and "no crosswalk," and did not indicate that the driver of the vehicle had committed an error. (Id. at 135-37.)

Third, a motor vehicle insurance application, submitted and signed by Wright several weeks after the collision, lists the place of accident as "50 Feet From Lincoln Place on Utica Avenue, Brooklyn, NY" (Def. Ex. 1); and Kings County Hospital Center records, prepared

---

observed the vehicle before being struck. Wright was also unable to recall the speed of the vehicle at an earlier deposition, casting doubt on his subsequent ability to remember the vehicle's speed at trial. (See Wright Dep. of June 10, 2011, at 20.) In any event, a finding that the vehicle had been traveling at twenty-five miles per hour would not change the court's Conclusions of Law set forth below.

[2] When asked at trial if he had spoken with Padilla, Wright testified: "Not really. I didn't really say too much to [Padilla] because he couldn't really understand what I was saying." (Tr. at 19.) In her summation, Wright's counsel argued that this testimony contradicts Padilla's testimony and thus provides grounds to question the accuracy of his report. (Id. at 146.) The court is unconvinced that there is in fact a contradiction; even very minimal conversation between Wright and Padilla would likely have been adequate for Wright to indicate the approximate location of the collision. In any event, to the extent there is a contradiction, the court finds Padilla's testimony more credible because it is corroborated by Austin's testimony and other documentary evidence described below.

following an examination of Wright the evening of the collision, indicate that Wright was "sideswiped by car accelerating at *green* light" (Def. Ex. 5 at U.S. 000155 (emphasis added)). These documents, presumably based on Wright's own accounts of the events, further corroborate Austin's testimony.

Whereas Austin's testimony is amply supported, Wright's testimony is internally inconsistent and at times supports Austin's account. While Wright testified that the collision occurred in the intersection, he also stated that immediately following the collision he was on the ground "between H&R Block and the electronics store," and that he was aided by an H&R Block employee as he searched for his missing shoe in the vicinity of the H&R Block branch. (Id. at 17-18.) Given that the H&R Block is two store lengths away from the intersection, Wright's position after the accident casts doubt on his testimony as to the location of the accident.

There is also evidence that more generally causes the court to question Wright's credibility. For example, Wright testified that he had not consumed any alcohol on the day of the collision or the night prior (id. at 32), but medical records prepared the day of the collision indicate a positive result for ethyl alcohol and that Wright had consumed alcohol "last night" (Def. Ex. 5 at U.S. 000151, 000161). Even assuming that alcohol consumption did not impair Wright's judgment on the day of the collision, the conflict between his testimony and the medical records further calls his testimony into question.

At summation, Wright's counsel argued that there was no evidence that Wright was running or sprinting prior to the collision, and that it "defies common sense that someone is going to see a vehicle pass them and then walk perpendicular into the side of the vehicle." (Tr. at 144, 47.) This argument mischaracterizes the testimony of the United States' witnesses. No witness testified that Wright walked at a ninety degree angle into the side of the vehicle. Rather,

the testimony indicates that Wright appeared (id. at 60) or "popped out" (id. at 99) between two parked SUVs and was side-swiped by the United States' vehicle—most likely by the side-view mirror that was misaligned after the collision (id. at 80).

In sum, the court finds that, driving north on Utica Avenue, Austin stopped the car at a red light at the intersection with Lincoln Place; that Austin accelerated when the light turned green to approximately fifteen miles per hour; and that Wright collided with the front passenger side of the vehicle when he stepped onto the street between two parked SUVs roughly outside the H&R Block branch between Lincoln Place and St. Johns Place.

## CONCLUSIONS OF LAW

*Legal Standard*

Under the Federal Tort Claims Act ("FTCA"), a person may bring a claim against the United States for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."[3] 28 U.S.C. § 1346(b)(1). Liability is determined based on the "law of the place where the act or omission occurred," which in this case is New York. Id. The elements of negligence under New York law are: "(1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." Solomon v. City of N.Y., 66 N.Y.2d 1026, 1027 (1985). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. See Kane v. United States, 189 F. Supp. 2d 40, 52 (S.D.N.Y. 2002).

Under New York law, a driver has a statutory duty to "exercise due care to avoid colliding with any [ ] pedestrian . . . upon any roadway." N.Y. Veh. & Traf. Law § 1146. The statute "does not impose on drivers a duty to avoid an accident no matter what the circumstances

---

[3] It is undisputed that Austin was an employee of the United States Government acting within the scope of his employment.

might be." Perez v. United States, No. 91-CV-5428 (BN), 1993 WL 149055, at *2 (S.D.N.Y. May 5, 1993). Rather, "'[d]ue care is that care which is exercised by *reasonably prudent drivers.*'" Kane, 189 F. Supp. 2d at 52 (emphasis added) (quoting Russell v. Adduci, 140 A.D.2d 844, 845-46 (N.Y. App. Div. 3d Dep't 1988)). A driver might fail to exercise due care by moving at an excessive speed, being inattentive, or driving in an uncontrolled manner. See Perez, 1993 WL 149055, at *2; see also Katanov v. Cty. of Nassau, 91 A.D.3d 723, 725 (N.Y. App. Div. 2d Dep't 2012) ("A driver is negligent when an accident occurs because he or she failed to see that which through the proper use of his or her senses he or she should have seen.").

*Application*

Based on the above findings of fact and legal standard, the court concludes that Austin was not negligent. Although he owed a duty to Wright, he did not breach that duty.

At the time of the collision, Austin was driving at approximately fifteen miles per hour—surely not an excessive rate of speed given the circumstances. While the rain may have decreased visibility, Austin acted appropriately by turning on his windshield wipers, and was attentively looking straight ahead as he was driving along Utica Avenue. He was able to quickly stop his car soon after the collision, suggesting that he was not driving in an uncontrolled manner. Because Wright stepped out suddenly between two parked SUVs, he likely was not visible to Austin until Austin observed a "dark presence" out of his peripheral vision, immediately before he heard a sound that presumably resulted from Wright's contact with the vehicle. Before he saw that "dark presence," Austin had no reason to expect that Wright would "pop out" from between two parked SUVs where he did not have the right of way. See N.Y. Veh. & Traf. Law § 1152(a) ("Every pedestrian crossing a roadway at any point other than within a marked crosswalk . . . shall yield the right of way to all vehicles upon the roadway.").

7

For these reasons, Austin exercised the degree of care of a reasonably prudent driver, and did not breach the duty he owed to Wright. See Kane, 189 F. Supp. 2d at 52; Perez, 1993 WL 149055, at *2. The United States is therefore not liable to Wright under the FTCA. The Clerk of the Court shall enter judgment for the United States.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
August 3, 2012

NICHOLAS G. GARAUFIS
United States District Judge